IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Louis Hanna | : | CIVIL ACTION |
| v. | : | |
| Lincoln Financial Group | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( x )

| | | |
|---|---|---|
| <u>May 23, 2019</u> | <u>Michael J. Salmanson</u> | *[signature]* |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| <u>215-640-0593</u> | <u>215-640-0596</u> | <u>msalmans@salmangold.com</u> |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Louis Hanna

**(b)** County of Residence of First Listed Plaintiff: Camden County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Salmanson, Esq., Salmanson Goldshaw, P.C.
Two Penn Center, Suite 1230, 1500 John F. Kennedy Boulevard
Philadelphia, PA  19102      215-640-0593

## DEFENDANTS
Lincoln Financial Group

County of Residence of First Listed Defendant: Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Stephanie J. Peet, Esq., Jackson Lewis P.C.
Three Parkway, 1601 Cherry Street, Suite 1350
Philadelphia, PA  19102

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | [X] 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
ADEA, 29 U.S.C. § 621; ADA, 42 U.S.C. § 12101; FMLA, 29 U.S.C. § 2601
Brief description of cause:
Age and/or disability discrimination, retaliation for taking FMLA leave

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 150,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____   DOCKET NUMBER _____

DATE: 5/23/2019

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

19   2273

Address of Plaintiff: 314 Park Place Drive, Cherry Hill, NJ   08002

Address of Defendant: 2005 Market St., 34th Floor, Philadelphia, PA 19103

Place of Accident, Incident or Transaction: 2005 Market St., 34th Floor, Philadelphia, PA 19103

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/23/2019   _____   46707
Attorney-at-Law / Pro Se Plaintiff   Attorney I.D. # (if applicable)

---

CIVIL: (Place a √ in one category only)

A.   *Federal Question Cases:*
1. Indemnity Contract, Marine Contract, and All Other Contracts
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Patent
6. Labor-Management Relations
7. Civil Rights ☑
8. Habeas Corpus
9. Securities Act(s) Cases
10. Social Security Review Cases
11. All other Federal Question Cases
    *(Please specify):* _____

B.   *Diversity Jurisdiction Cases:*
1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify):* _____
7. Products Liability
8. Products Liability – Asbestos
9. All other Diversity Cases
   *(Please specify):* _____

---

ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Michael J. Salmanson, Esq., counsel of record or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 05/23/2019   _____   46707
Attorney-at-Law / Pro Se Plaintiff   Attorney I.D. # (if applicable)


MAY 23 2019

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Louis Hanna : | CIVIL ACTION NO. _____ | |
| Plaintiff, : | | |
| : | **JURY TRIAL DEMANDED** | |
| v. : | | |
| : | | |
| Lincoln Financial Group, : | | |
| Defendant. : | | |
| _____: | | |

# COMPLAINT

Plaintiff Louis Hanna avers as follows:

## NATURE OF ACTION

1. Plaintiff hereby complains that Defendant Lincoln Financial Group ("Lincoln") unlawfully terminated his employment because of his age and/or perceived disability, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* and/or the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101 *et seq.*, and the New Jersey Law Against Discrimination, as amended ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* Furthermore, Lincoln retaliated against Mr. Hanna in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

2. In addition, Lincoln failed to pay Mr. Hanna the commissions due and owing in violation of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1 to -4.14.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the ADEA, ADA, and FMLA claims pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the breach of contract, NJLAD, and NJWPL claims pursuant to 28 U.S.C. § 1367.

4. Venue is appropriate in this District under 28 U.S.C. § 1391, as all or some of the discrimination actions took place within the District, and in particular at Defendant's offices in Philadelphia.

5. Mr. Hanna exhausted his remedies to the extent required by the anti-discrimination statutes invoked herein.

## FACTS

6. Lincoln hired Mr. Hanna in September 2015 in a dual role of regional recruiter and internal recruiter team manager.   During the time of Mr. Hanna's employment, no other regional recruiter held dual positions. At the time of his initial hire, he reported to James Sorey. However, Mr. Sorey was subsequently terminated.

7. In early 2017, Mr. Hanna began to have an underlying health issue.  The uncertainties related to the potentially serious issue caused Mr. Hanna significant emotional distress.

8. In or around April or May 2017, Mr. Hanna met with Kelly Pippett, a Lincoln Human Resources manager to discuss Mr. Hanna's health concerns.  At that time, Mr. Hanna discussed with Ms. Pippett the possibility of going out on Short-Term Disability, FMLA and/or receiving paid time off in case his underlying medical condition required it.

9. Mr. Hanna was not given his 2017 goals until April of that year.

10. On June 15, 2017, Mr. Hanna received a Formal Written Warning, which contained a Performance Improvement Plan ("PIP").  One element of that Plan was that, "By July 15th you

must have made significant progress toward your 2017 sourced goal of $1,600,000 and joint goal of $2,400,000." A true and correct copy of the Warning is attached hereto as Exhibit 1.

11. On June 19, at Mr. Hanna's request, he met with Ms. Pippett to inform her that he disagreed with the PIP, as well as a prior earlier PIP (which Mr. Hanna had been told he had successfully completed). Mr. Hanna wrote a formal rebuttal on June 22, 2017. A true and correct copy of the rebuttal is attached as Exhibit 2.

12. On June 29, 2017, Mr. Hanna's manager, Paul Cardenas (who had replaced Mr. Sorey), informed Mr. Hanna by email that, within 30 days, he needed to demonstrate "significant improvement" in order to demonstrate that his goal would be achievable "by year end." In particular, Mr. Cardenas noted:

> We will not define "significant improvement" *since we will consider realistic promising pipeline statistics in our consideration."* (emphasis added).

13. Mr. Cardenas also acknowledged that Ms. Pippett had informed Mr. Hanna that he was eligible for short-term disability benefits, and gave Mr. Hanna further guidance on how to apply for them (Exhibit 3).

14. After Mr. Hanna's disclosure of his health issues, Mr. Cardenas and others began to discriminate, retaliate and otherwise demonstrate a bias against Mr. Hanna because of his health issues. Examples of this conduct include, but are not limited to:

   a. Making inappropriate comments regarding Mr. Hanna being unreliable and "playing the victim."

   b. Moving Mr. Hanna's office from Center City to Cherry Hill effective on or about July 17, 2017.

   c. Assigning Mr. Hanna to solicit prospective financial advisors from entities that were subject to Lincoln's own "no solicit" list.

3

     d.  Stealing and/or diverting leads on potential recruits.

     e.  Failing to give Mr. Hanna credit for advisors he recruited.

     f.  Failing to provide Mr. Hanna with a copy of his HR file upon request.

     g.  Deleting Mr. Hanna's unused vacation time.

15.  Much of Mr. Hanna's compensation was in the form of a commission based compensation plan.  The relevant compensation Plan is attached hereto as Exhibit 4.  As set forth in the Plan:

> Employees who are receiving benefits under FMLA are not eligible for incentive compensation.  Employees on unpaid FMLA will receive variable compensation payments for cases that are sold prior to their unpaid FMLA leave.  Cases that are sold during an employee's unpaid FMLA leave (that are not reassigned to another sales representative) will be paid on the next variable compensation payment cycle when the employee returns to work."

16. This caused Mr. Hanna emotional distress in deciding whether to take the FMLA leave in order to protect his health and risk losing commissions if his active prospects were assigned to another sales representative, or come to work to protect his commissions and risk his health.

17. Despite having many potential recruits "in the pipeline" which, if completed, would more than meet his annual recruiting goal, Mr. Hanna was placed on a "final" PIP on August 3, 2017.

18. On or about August 9, 2017, Mr. Hanna applied for a leave of absence under both FMLA and short-term disability.

19. On September 20, 2017, Mr. Hanna was advised in writing that his FMLA leave had been approved for August 10, 2017 to August 13, 2017 and September 10, 2017 to September 13, 2017.  Mr. Hanna was also approved for short-term disability leave from September 1, 2017 to September 13, 2017.

4

20. On or about September 21, 2017, Mr. Hanna applied for intermittent leave under the FMLA for the time period September 14, 2017 to December 15, 2017.

21. As memorialized in a letter dated October 20, 2017, Mr. Hanna was approved for intermittent FMLA leave for the period September 14, 2017 to December 15, 2017. Upon information and belief, Mr. Cardenas was made aware of this approval by e-mail as of October 20, 2017. However, Mr. Hanna did not receive notification (by regular mail) until after his termination.

22. On October 26, 2017, Mr. Hanna was terminated, allegedly for poor performance and failing to improve his performance under the PIP toward meeting his year-end goal.

23. The rationale for Mr. Hanna's termination was clearly pretextual.

24. In fact, but for his termination, Mr. Hanna was likely to meet his financial goal for the year, and would have been the top-ranked recruiter, by sales, for the year.

25. According to the "Quarterly Pipeline" report, which was the tool by which Lincoln documented both "ownership" of the recruits, the status of recruitment, and projected revenue, Mr. Hanna had more than enough potential recruits to meet the year-end goals in his PIP. Indeed, the Quarterly Pipeline shows Mr. Hanna had far more recruits in both number and dollars than any other recruiter.

26. Indeed, two of the advisors whom Mr. Hanna had successfully recruited, Messrs. Kane and McDermott, started within days of his termination, having already: (1) accepted their offers of employment; (2) signed a lease for office space several weeks before their start date; and (3) registered a new corporation to do business through Lincoln on October 3, 2017, some three weeks before Mr. Hanna's termination; (4) commencing the transition of client assets to

Lincoln. Messrs. Kane and McDermott alone were expected to generate just shy of $3 million in revenue.

27. Indeed, it appears that Lincoln deliberately timed Mr. Hanna's termination to avoid having to pay him the very substantial incentive payments which would have otherwise been generated by the Kane/McDermott placement.

28. Further evidence of pretext is the fact that Lincoln defended its action to the EEOC by claiming that Mr. Hanna had *zero* sales for 2017 at the time of his termination. This statement was demonstrably false, as Mr. Hanna in fact had made other placements for which he had received commissions, both before and after his termination, and indeed had been responsible for additional recruits, who joined either before, or just after, his termination.

29. In addition, Lincoln has attempted to justify its termination by claiming that Mr. Hanna was not, in fact, either fully or partially responsible for the recruiting advisors, despite the fact that the official Pipeline reports listed him as an "owner" of the recruits.

30. In fact, in terms of Kevin McDermott and John Kane, who registered with Lincoln just days after Mr. Hanna's termination, Mr. Hanna was involved in the recruiting process from the inception. Over the course of seven months, Mr. Hanna conducted at least three meetings with Mr. Kane and Mr. McDermott including arranging the initial meeting, drafting/negotiating their offer letters, and numerous email/phone communications.

31. In addition, Mr. Hanna successfully recruited four advisors (John Glowka, Theresa Detrick, Patricia Low, and Mark Katelhon) who registered with Lincoln in 2017, prior to Mr. Hanna's termination.

32. Upon information and belief, the reason for Mr. Hanna's termination was a pretext for Lincoln's discrimination based on Mr. Hanna's age, actual and/or perceived disability, and/or in retaliation for requesting FMLA leave.

33. Mr. Hanna timely filed a charge of discrimination with the Equal Employment Opportunity Commission, and properly exhausted his administrative remedies.

34. Lincoln compensated Mr. Hanna, in part, according to an Incentive Compensation Plan, which defined commissions payable on advisors recruited into Lincoln and trail commissions on previously recruited advisors.

35. Lincoln required Mr.Hanna to submit an electronic acknowledgement and acceptance of the terms and conditions of the Incentive Compensation Plan in order to participate in the benefits of the plan.

36. Mr. Hanna successfully recruited John Glowka, who registered with Lincoln on May 23, 2017; however, Lincoln failed to pay Mr. Hanna the commission due.

37. Mr. Hanna successfully recruited Patricia Low, who registered with Lincoln on October 2, 2017; however, Lincoln failed to pay Mr. Hanna the commission due.

38. In addition, Mr. Hanna successfully recruited Kevin McDermott, John Kane, Gerald Katelhon, Thomas Burke, and Phil Melanson, who all registered with Lincoln shortly after Mr. Hanna's termination, and Lincoln failed to pay Mr. Hanna the commission due.

## **COUNT I – ADEA**

39. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though set forth fully herein.

40. Lincoln was an employer covered by the ADEA at the time it terminated Mr. Hanna's employment.

41. At the time of his termination, Mr. Hanna was 50 years old and, on information and belief, was the oldest national recruiter within Lincoln.

42. Upon information and belief, Mr. Hanna was replaced, at least in part, by Elliott Williams, a significantly younger recruiter (and, on information and belief, the youngest recruiter by about 20 years) who was also placed on a PIP; but who was not terminated despite failing to meet goals, and was instead promoted to Mr. Hanna's position.

43. Mr. Hanna's termination appears to be part of a pattern of termination of older recruiters, including but not limited to, Matthew Phayre, Robert Conrad, James Sorey, and Michael Doss.

44. Defendant would not have terminated Mr. Hanna but for his age.

45. Lincoln took its action against Mr. Hanna in willful violation of his right to be free from age discrimination in his employment under the ADEA.

WHEREFORE Plaintiff seeks judgment in his favor, and against Defendant, in the form of: (a) backpay and benefits; (b) an equal amount in liquidated damages for Defendant's willful violation of the ADEA; (c) Reinstatement, or front pay in lieu thereof; (d) prejudgment interest; (e) attorneys' fees and costs; and such other appropriate and/or equitable relief as allowed by law and as determined by the Court.

## COUNT II – ADA

46. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though set forth fully herein.

47. Lincoln was an employer covered by the ADA at the time it terminated Mr. Hanna's employment.

48. Mr. Hanna's termination violated the ADA's prohibition against employment discrimination based on disability and/or perceived disability, and/or in retaliation for invoking his rights under the ADA.

WHEREFORE plaintiff seeks judgment in his favor, and against Defendant, in the form of: (a) backpay and benefits; (b) compensatory damages; (c) punitive damages; (d) Reinstatement, or front pay in lieu thereof; (e) prejudgment interest; (f) attorneys' fees and costs; and such other appropriate and/or equitable relief as allowed by law and as determined by the Court.

### **COUNT III – NJLAD**

49. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though set forth fully herein.

50. At the time he was terminated from employment, Mr. Hanna had been reassigned to New Jersey, and was therefore a covered employee under the NJLAD.

51. Lincoln was an employer covered by the NJLAD at the time it terminated Mr. Hanna's employment.

52. Lincoln's termination of Mr. Hanna's employment violated the NJLAD's prohibition against employment discrimination based on age and/or disability.

WHEREFORE plaintiff seeks judgment in his favor, and against Defendant, in the form of: (a) backpay and benefits; (b) compensatory damages; (c) punitive damages; (d) reinstatement, or front pay in lieu thereof; (e) prejudgment interest; (f) attorneys' fees and costs; and such other appropriate and/or equitable relief as allowed by law and as determined by the Court.

## COUNT IV – FMLA

53. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though set forth fully herein.

54. Lincoln was an employer covered by the FMLA at the time it terminated Mr. Hanna's employment.

55. Lincoln's termination of Mr. Hanna's employment violated the FMLA's prohibition against retaliation for requesting FMLA leave.

56. In addition, Lincoln's 2017 Incentive Compensation Plan unlawfully penalized recruiters including, but not limited to, Mr. Hanna, for invoking their rights under the FMLA.

57. Indeed, on information and belief, after Mr. Hanna asserted that the structure of the Compensation Plan violated the FMLA, Lincoln amended the plan to attempt to eliminate the illegal provisions.

58. Defendant's violation of the FMLA was willful.

WHEREFORE plaintiff seeks judgment in his favor, and against Defendant, in the form of: (a) backpay and benefits; (b) liquidated damages for Defendant's willful violation of the FMLA; (c) compensatory damages; (d) Reinstatement, or front pay in lieu thereof; (e) prejudgment interest; (f) attorneys' fees and costs; and such other appropriate and/or equitable relief as allowed by law and as determined by the Court.

## COUNT V – BREACH OF CONTRACT

59. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though set forth fully herein.

60. The Incentive Compensation Plan constitutes a contract that Lincoln offered to Mr. Hanna, and Mr. Hanna accepted.

61. Mr. Hanna successfully recruited advisors during his employment with Lincoln.

62. Notwithstanding Mr. Hanna's performance under the Incentive Compensation Plan, Lincoln failed to pay Mr. Hanna in accordance with the terms of the Plan.

63. In the alternative, to the extent that the Plan required Mr. Hanna to be still employed at the time of payment under the Plan, Lincoln violated the implied covenant of good faith and fair dealing by terminating him with the intent of depriving him of the compensation which he would have otherwise earned under the Plan.

64. Lincoln breached that contract by failing to pay Mr. Hanna the commissions due on one or more recruited advisors in accordance with the contract.

WHEREFORE plaintiff seeks judgment in his favor, and against Defendant for such amounts due and owing to him under the Incentive Compensation Plan and/or which would have become due and owing but for Lincoln's breach of its covenant of good faith and fair dealing, together with such other relief as allowed by law.

## COUNT V – NJWPL

65. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though set forth fully herein.

66. The payments under the Incentive Compensation Plan constitutes wages within the meaning of the New Jersey Wage Payment Law.

67. Lincoln failed to pay Mr. Hanna commissions due after his termination in violation of the NJWPL.

68. In addition, Lincoln failed to reimburse Mr. Hanna for expenses incurred despite multiple requests for same.

12

WHEREFORE Plaintiff seeks judgment in his favor, and against Defendant for such amounts due and owing to him under the Incentive Compensation Plan and/or which would have become due and owing but for Lincoln's breach of its covenant of good faith and fair dealing, together with such other relief as allowed by law.

Dated: May 23, 2019

                                              /s/ Michael J. Salmanson
Michael J. Salmanson, ID. 46707
SALMANSON GOLDSHAW, P.C.
Two Penn Center, Suite 1230
1500 John F. Kennedy Boulevard
Philadelphia, PA   19102
215-640-0593
215-640-0596 (fax)